## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No.: 23-cr-235 (TSC)** |
| | : | |
| **v.** | : | **18 U.S.C. § 111(a)(1)** |
| | : | |
| **DEVIN MCNULTY,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

### STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Devin McNulty, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

***The Attack at the U.S. Capitol on January 6, 2021***

1.      The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2.      On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public. The grounds around the Capitol were posted and cordoned off, and the entire area as well as the Capitol building itself were restricted as that term is used in Title 18, United States Code, Section 1752 due to the fact that the Vice President and the immediate family of the Vice President, among others, would be visiting the Capitol complex that day.

3.      On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.      As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5.      At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6.      At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after

2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7.      Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

8.      The defendant, Devin McNulty, owns a moving business and lives in Knoxville, Tennessee. In the early hours of January 6, 2021, the defendant traveled to Washington, D.C. to attend the rally hosted by President Trump on the Ellipse. The defendant arrived at the Capitol grounds in the early afternoon. Once there, he climbed up a wall at the northwest corner of the Capitol Building to reach the Upper West Terrace.

9.      The defendant continued around to the north side of the Capitol Building where he joined the riot brewing near the North Door. At one point, the defendant walked towards the

vestibule of the North Door, but he turned around after a substance filled the air. The defendant then turned towards the crowd and pumped his fist several times in the air. Later, the defendant entered the North Door vestibule. Here, he looked through the glass in the doors and into the Capitol Building where several law enforcement officers stood. Shortly afterwards, the defendant left the vestibule, coughing due to a substance in the air.

10.     The defendant remained in this area when several USCP officers arrived and stood in front of the North Door. The officers told the defendant and the other rioters to leave the area, but the defendant did not comply. When a rioter standing next to the defendant told the officer to let the rioters into the Capitol, the officer responded, "I can't do that." At the same time, an alarm sounded in the background.

11.     Eventually, officers from several law enforcement agencies, including Corporal R.R. of the Prince George's County Police Department arrived at the Capitol Building to assist the USCP. These officers moved from the Upper West Terrace to the north side of the Capitol to clear the area of rioters. When Corporal R.R. and the other officers reached the North Door, the defendant pushed his hands against the corporal's riot shield multiple times to prevent the officers' forward movement.

### *Elements of the Offense*

12.     The parties agree that assaulting, resisting, or impeding certain officers, 18 U.S.C. § 111(a)(1), requires the following elements:

   a.   First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with Corporal R.R., an officer from the Prince George's County Police Department;

   b.   Second, the defendant did such acts forcibly;

   c.   Third, the defendant did such acts voluntarily and intentionally;

    d.   Fourth, Corporal R.R. was assisting officers of the United States who were then engaged in the performance of their official duties;

    e.   Fifth, the defendant made physical contact with Corporal R.R. or acted with the intent to commit another felony. For the purposes of this element, "another felony" refers to the offense charged in Count 2, civil disorder, 18 U.S.C. § 231(a)(3).

### *Defendant's Acknowledgments*

13.    The defendant knowingly and voluntarily admits to all the elements as set forth above.  Specifically, the defendant admits that he assaulted, resisted, opposed, impeded, and interfered Corporal R.R. when he pushed against the officer's rioter shield. The defendant further admits that he made physical contact with Corporal R.R. and that he acted with the intent to commit another felony.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    */s/ Andrew Haag*
    ANDREW S. HAAG
    Assistant United States Attorney
    MA Bar No. 705425
    601 D Street, N.W.
    Washington, DC 20530
    (202) 252-7755
    Andrew.Haag@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Devin McNulty, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 11/7/23

Devin McNulty
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 11/7/23

Colin Garrett
Attorney for Defendant